FEE DUE

Brandon Jamal Perkins
NAME
BK 4497
PRISON IDENTIFICATION/BOOKING NO.
P.O. Box 950 Folsom Ca 95763
ADDRESS OR PLACE OF CONFINEMENT

Note:    It is your responsibility to notify the Clerk of Court in writing of any change of address. If represented by an attorney, provide his or her name, address, telephone and facsimile numbers, and e-mail address.

FILED
CLERK, U.S. DISTRICT COURT

JAN 1 2 2023

CENTRAL DISTRICT OF CALIFORNIA
BY ___ EEE ___ DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Brandon Jamal Perkins
FULL NAME (Include name under which you were convicted.)
Petitioner,

v.

Warden Tracy Johnson
NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED PERSON HAVING CUSTODY OF PETITIONER
Respondent.

CASE NUMBER:

CV 2:23-CV-00278-MWF (ADS)
To be supplied by the Clerk of the United States District Court

☐ _____ AMENDED

PETITION FOR WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY
28 U.S.C. § 2254

PLACE/COUNTY OF CONVICTION _____
PREVIOUSLY FILED, RELATED CASES IN THIS DISTRICT COURT
(List by case number.)
CV _____
CV _____

## INSTRUCTIONS - PLEASE READ CAREFULLY

1.    To use this form, you must be a person who either is currently serving a sentence under a judgment against you in a California state court, or will be serving a sentence in the future under a judgment against you in a California state court. You are asking for relief from the conviction and/or the sentence. This form is your petition for relief.

2.    In this petition, you may challenge the judgment entered by only one California state court. If you want to challenge judgments entered by more than one California state court, you must file a separate petition for each court.

3.    Make sure the form is typed or neatly handwritten. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

4.    Answer all the questions. You do not need to cite case law, but you do need to state the federal legal theory and operative facts in support of each ground. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a legal brief or arguments, you may attach a separate memorandum.

5.    You must include in this petition all the grounds for relief from the conviction and/or sentence that you challenge. You must also state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

6.    You must pay a fee of $5.00. If the fee is paid, your petition will be filed. If you cannot afford the fee, you may ask to proceed in forma pauperis (as a poor person). To do that, you must fill out and sign the declaration of the last two pages of the form. Also, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account at the institution. If your prison account exceeds $25.00, you must pay the filing fee.

7.    When you have completed the form, send the original and two copies to the following address:

Clerk of the United States District Court for the Central District of California
United States Courthouse
ATTN: Intake/Docket Section
255 East Temple Street, Suite TS-134
Los Angeles, California 90012

PLEASE COMPLETE THE FOLLOWING *(check appropriate numbers)*

This petition concerns:

1.  ☒ a conviction and/or sentence.
2.  ☐ prison discipline.
3.  ☐ a parole problem.
4.  ☐ other.

## PETITION

1.  Venue
    a.  Place of detention __Folsom State Prison__
    b.  Place of conviction and sentence __Los Angeles County__

2.  Conviction on which the petition is based *(a separate petition must be filed for each conviction being attacked).*
    a.  Nature of offenses involved *(include all counts)*: __2nd degree murder, felon in possession of firearm, use of firearm during commision of a crime, accessory after the fact__
    b.  Penal or other code section or sections: __197(A), 29800(A)(1), 25850(A), 32__

    c.  Case number: __GA099146__
    d.  Date of conviction: __5/8/2019__
    e.  Date of sentence: __September 2020__
    f.  Length of sentence on each count: __15 years to life, 10 years, 1year and 4 months__
    g.  Plea *(check one)*:
        ☑ Not guilty
        ☐ Guilty
        ☐ Nolo contendere
    h.  Kind of trial *(check one)*:
        ☑ Jury
        ☐ Judge only

3.  Did you appeal to the California Court of Appeal from the judgment of conviction?  ☑ Yes  ☐ No
    If so, give the following information for your appeal *(and attach a copy of the Court of Appeal decision if available)*:
    a.  Case number: __B302370__
    b.  Grounds raised *(list each)*:
        (1) __Trial Court's denial of Appellant's motion for new trial constituted abuse of discretion__
        (2) __Trial Court failed to instruct on lesser included gun allegation__

(3) Prosecution failed to secure a court finding that appellant was felon prior to charged —

(4) Insufficient evidence supports accessory after the fact

(5) Convictions for murder and accessory cannot both stand

(6) Fines and Fees stricken in open court by imposed

c. Date of decision: July 30, 2021

d. Result: Granted in part, Affirmed in part

4. If you did appeal, did you also file a Petition for Review with the California Supreme Court of the Court of Appeal decision? ☒ Yes  ☐ No

If so, give the following information *(and attach copies of the Petition for Review and the Supreme Court ruling if available)*:

a. Case number: S270675

b. Grounds raised *(list each)*:

(1) Insufficient evidence victim was dead when shots were fired from getaway car

(2) _____

(3) _____

(4) _____

(5) _____

(6) _____

c. Date of decision: October 2021

d. Result: Denied

5. If you did not appeal:

a. State your reasons _____

b. Did you seek permission to file a late appeal?  ☐ Yes  ☐ No

6. Have you previously filed any habeas petitions in any state court with respect to this judgment of conviction?
☒ Yes  ☐ No

If so, give the following information for each such petition *(use additional pages, if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

a. (1) Name of court: Superior Court of California County of Los Angeles

(2) Case number: GA099146

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: November 2021

(4) Grounds raised (list each):

    (a) S.B. 775

    (b) S.B. 81

    (c)

    (d)

    (e)

    (f)

(5) Date of decision: pending

(6) Result pending

(7) Was an evidentiary hearing held?    ☐ Yes    ☒ No

b. (1) Name of court: Superior Court of California County of Los Angeles

   (2) Case number: GA099146

   (3) Date filed (or if mailed, the date the petition was turned over to the prison authorities for mailing): Jul 18, 2022

   (4) Grounds raised (list each):

    (a) Jury failed to follow instructions

    (b) Insufficient evidence to support murder conviction

    Ineffective Assistance of counsel, counsel failed to make timely objection

    Prosecutorial misconduct improper arguments by counsel

    (e)

    (f)

   (5) Date of decision: Pending

   (6) Result Pending

   (7) Was an evidentiary hearing held?    ☐ Yes    ☒ No

c. (1) Name of court: _____

   (2) Case number: _____

   (3) Date filed (or if mailed, the date the petition was turned over to the prison authorities for mailing): _____

   (4) Grounds raised (list each):

    (a)

    (b)

    (c)

    (d)

    (e)

    (f)

(5) Date of decision: _____

(6) Result _____
_____

(7) Was an evidentiary hearing held?    ☐ Yes ☐ No

7.  Did you file a petition for certiorari in the United States Supreme Court?    ☐ Yes    ☒ No

    If yes, answer the following:

    (1) Docket or case number (if you know): _____

    (2) Result: _____
_____

    (3) Date of result (if you know): _____

    (4) Citation to the case (if you know): _____

8.  For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than five grounds. Summarize briefly the <u>facts</u> supporting each ground. For example, if you are claiming ineffective assistance of counsel, you must state facts specifically setting forth what your attorney did or failed to do.

    **CAUTION:**    *Exhaustion Requirement*: In order to proceed in federal court, you must ordinarily first exhaust your state court remedies with respect to each ground on which you are requesting relief from the federal court. This means that, prior to seeking relief from the federal court, you first must present <u>all</u> of your grounds to the California Supreme Court.

    a.  Ground one: (See Attached Page, Pg 1)

        (1) Supporting FACTS: (See Attached Page, Pg 1)
_____
_____
_____
_____

        (2) Did you raise this claim on direct appeal to the California Court of Appeal?    ☒ Yes    ☐ No

        (3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☒ Yes    ☐ No

        (4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐ Yes    ☒ No

    b.  Ground two: _____
_____

        (1) Supporting FACTS: _____
_____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?    ☐ Yes    ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☐ Yes    ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐ Yes    ☐ No

c.   Ground three: _____

_____

(1) Supporting FACTS: _____

_____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?    ☐ Yes    ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☐ Yes    ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐ Yes    ☐ No

d.   Ground four: _____

_____

(1) Supporting FACTS: _____

_____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?    ☐ Yes    ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☐ Yes    ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐ Yes    ☐ No

e.   Ground five: _____

_____

(1) Supporting FACTS: _____

_____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?    ☐ Yes    ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☒ Yes    ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐ Yes    ☒ No

9.  If any of the grounds listed in paragraph 8 were not previously presented to the California Supreme Court, state briefly which grounds were not presented, and give your reasons: _____

_____

_____

10. Have you previously filed any habeas petitions in any federal court with respect to this judgment of conviction?

☐ Yes    ☒ No

If so, give the following information for each such petition *(use additional pages, if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

a.    (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?    ☐ Yes  ☐ No

b.    (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?    ☐ Yes  ☐ No

11. Do you have any petitions now pending (i.e., filed but not yet decided) in any state or federal court with respect to this judgment of conviction?    ☒ Yes    ☐ No

If so, give the following information *(and attach a copy of the petition if available)*:

(1) Name of court: Superior Court of California County of Los Angeles

(2) Case number: GA099146

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: November 2021

(4) Grounds raised *(list each)*:

(a) Senate Bill # 775 (Represented by counsel)

(b) Senate Bill # 81

(c) _____

(d) _____

(e) _____

(f) _____

12. Are you presently represented by counsel?    ☐ Yes  ☒ No

If so, provide name, address and telephone number: _____

_____

_____

WHEREFORE, petitioner prays that the Court grant petitioner all relief to which he may be entitled in this proceeding.

_____
*Signature of Attorney (if any)*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on  1-6-23
*Date*                              _____
*Signature of Petitioner*

ARGUMENT

I

THE TRIAL COURT'S DENIAL OF
APPELLANT'S MOTION FOR NEW
TRIAL CONSTITUTED AN ABUSE OF
DISCRETION UNDER STATE LAW AND
FEDERAL DUE PROCESS AS
INSUFFICIENT EVIDENCE SUPPORTS
THE MURDER CONVICTION

A . Introduction

Prior to sentencing, appellant brough a motion for new
trial on his murder two conviction pursuant to Penal Code
section 1181, subdivision (6), which permits the trial court
to order a new trial "[w]hen the verdict.....is contrary to law
or evidence." (3CT 551-567, 571-574, 630-635; 7RT 4525-4553.)

In ruling on such a motion, the trial court is supposed to
independently weigh the evidence and "determine whether it is
sufficient to prove each required element beyond a reasonable doubt
to the judge, who sits, in effect, as a '13th juror." (Porter v.
Superior Court (2009) 47 Cal.4th 125, 133.)

On review, this Court should defer to the trial court's
"credibility determinations and findingon questions of hist-
orical fact if supported by substantial evidence" (People V.
O'Malley (2016) 62 Cal.4th 944, 1016) and uphold the ruling
"unless a manifest and unmistakable abuse of discretion clearly
appears." (People v. Delgado (1993) 5 Cal.4th 312, 328.)

Appellant was tried as an aider and abettor.(7RT 3062,3064;
see also 7RT 3302 ["The People, as far as [appellant] is concern,
have elected to proceed under the sole theory of an aider and
abettor"]; 3303 ["The only way [appellant] can be found guilty of
either first- or second-degree murder is as an aider and abettor"]
Appellant did not fire his gun or physically engage Niles during

1

the confrontation on the street; he did not even speak to Niles. (4,7RT 2178, 2183, 2278-2279, 3063.)

The prosecution's central argument was that appellant was liable as an aider and abettor for firing his wepon from Parker's car as he and Parker drove away from the scene: "The murder in this case was not completed until Phillip Niles actually died. We don't know that Phillip Niles actually died until Officer Stafford..... pronounced him dead," (7RT 3062.) "[A]fter Laquan Parker shot Phillip and Phillip ran away, Phillip was still alive." (7RT 3062.) "At the moment [appellant] fires those two rounds from that beretta from the passenger side of the car, in his mind, Phillip Niles is still alive; and in reality, Phillip Niles is still alive; and we know that from the blood trail [that Niles ran] south and Parker and [appellant] hunted him like an animal. They drove in that exact same direction, [and appellant] fired two rounds at the last spot that he knew Phillip Niles was at with the specific intent to help Laquan Parker complete that murder." (7RT 3088-3089.)

We know that Phillip Niles did not die until he was pronounced dead by Officer Stafford many, many, many minutes later after the police finally arrived. We know that Laquan Parker and [appellant] hunted Niles after Parker had shot and injured him, and [appellant] shot in the direction of Phillip Niles because he wanted to complete the job." (7RT 3145.)

Although the jurors found that appellant's gunshots did'nt hit or kill Niles (3CT 506-510, 518-520; 7RT 3604-3608), him simply firing his gun assisted the murder: [I]t was a long period of time before they actually found where Phillip Niles was. Why is that? Because the residents.....the people in the neighborhood....were scared of [appellant's] gunshots. What was the effect of those gunshots? It delayed aid, and it delayed assistance to Phillip...... [That] aided and abetted the murder." (7RT 3098.)

2

At appellant's motion for new trial, the prosecution focused used the same argument: "What I Want to focus on is the time period in between the moment where Laquan Parker shoots and the time period from there to the moment that [appellant] shoots,and that is the focus of an aider and abetting argument.

That is the focus on what is going on here, and that is the relevant time period when we look at what action show [appellant] specific intent to kill to help Laquan Parker kill Phillip Niles as an aider and abettor." (7RT 4532.) "Timing of the death is critical in this case." (7RT 4533.) Niles was "clearly alive" when appellant fired his two shots from the car based on the fact Niles turn and ran after Parker shot him and left a trail of blood on the same side of the street as the Jetta's passenger seat. (7RT 4533, 4535.) " It's undisputed that at the time[appellant] fired those rounds Niles is still alive; and the jury's finding of second-degree murder shows that they believed that when [appellant] fired out of the car at Niles it was not a warning shot. It was a shot directed to finish the shot that Parker had already started." (7RT 4534.)

The trial court ultimately denied appellant's motion, finding substantial evidence that appellant aided and abetted the murder. (7RT 4554.)

There was no such evidence. The trial court accordingly abused its discretion. (Delgado, supra, 5 Cal.4th at p. 328. [standard of review].)

B. Analysis

Given the prosecution's theory of the case, the juror's verdict on the murder charge is contrary to law and evidence.

As the prosecution conceded in argument to the jurors and on the new trial motion, "The timing of the death is critical in this case." (7RT 4533.) Critical. That is because "a murder ends with the death of the victim." (People v. Esquivel (1994) 28 Cal.App. 4th 1386, 1397.) If Niles was dead before appellant fired his weapon, that act would not have aider and abetted the murder, for

3

1    there would have been no continuing murder for appellant to aid
2    and abet with that act. (People v. Montoya (1994) 7 Cal.4th 1027,
3    1039 ["if a defendant's liability for an offense is predicated up-
     on the theory that he or she aided and abetted the perpetrator,
4    the defendant's intent to encourage or facilitate the actions of
5    the perpetrator must be formed prior to or during commission of
     that offense"].)
6        On the other hand, if Niles were alive when appellant shot out
7    the car window  , those could have aided and abetted the murder.
8    Although Parker had already shot Niles at least three times from
     "very close"range (7RT 3063, 3066)......the fatal biow...the mur-
9    der would still have been ongoing. (People v. Celis (2006) 141
10   Cal.App.4th 466 , 473-474 ["a person may aid and abet a murder
11   after the fatal blow is struck as long as the aiding and abetting
     occurs before the victim dies. After the victim dies, what would
12   be aiding and abetting legally turns into being an accessory '
13   ' after a felony has been committed"].) That's why---according to
14   the prosecution both during its arhument to the jurors and its
     litigation of the new trial motion---the timing of Niles'death was
15   "critical" in this case.
16       There is insufficient evidence to support the finding that
17   Niles was alive at the time appellant fired his shots out the car
     window. The prosecution in several places argued that Niles was
18   alive at that time----averring a few times that Niles being alive
19   was "undisputed". (7RT 3145, 4533-4534.) Even though Parker had
20   shot Niles at least three times from "very close" range (7RT 3063,
     3066). the prosecution pointed to the following evidence in sup-
21   port of it assertion that Niles was alive: (1) Niles turned and
22   ran; (2) Niles left a trail of blood; (3) the jetta left the scene
23   in the same direction towards which Niles had run; (4) appellant
24   fired from the passager seat of the Jetta, which was on the same
     side of the street AS Niles; and (5) Officer Stafford pronounced
25   Niles dead when he arrived. (7RT 3088-3089.)
26
27
28

4

A reasonable person could only speculate from this combination evidence as to whether or not Niles was alive at the time appellant fired his two shots. According to both percipient witnesses, the second set of shots---appellant's ---occurred about a minute after Niles had been shot. (4RT 2187, 2189.) The fact that Niles already dead when Officer Stafford found him (2RT 1539-1541) implies neither that Niles died seconds after the shooting (dead when appellant shot) or right before Stafford arrived (alive when appellant shot)---we simply can't tell when Niles died from the fact of Stafford's arrival; we can only tell that he was already dead.

Similarly, the fact that Niles turned, ran, and left a trail of blood (3-4,6RT 1967, 2241, 2741, 2301, 2746) before he exired does not tell us when he expired; it could have been before Parker and appellant drove away, or after---there is just no rational way to tell. Nor is there a way to tell from the diriction the Jetta drove or the side appellant sat on whether Niles was alive at the time of the shots. According to the prosecution, appellant was "100 feet south" of Niles when he fired his shots---"pretty far a way" from Niles, according to the prosecution; so far away that it saved appellant from a direct perpetrator, murder one conviction. (7RT 3063-3064 ["I'm not going to ask you to convict[appellant] of a first degree murder for something that's only possible].) It was also "very dark." (2-3 RT 1586, 1820, 2179, 2300.) And the Jetta sped away from the scene without slowing or stoping----"fast." (4RT 2118, 2187, 2189, 2309.) It is simply unreasonable to infer that appellant or Parker perceived Niles to be alive under those conditions: driving fast and continuous to get away from a dark murder scene with Niles "pretty far away."(7RT 3063-3064.) Indeed, Love didn't even know whether the Jetta drove in Niles' direction. (4RT 2121.) And, according to Lyons, the Jetta did not "drive in the direction that [she] last saw [Niles run]"_____ rather, Parker "flipped a bitch" "and got out of there." (4RT 22-45, 2302.) A reasonable person cannot look at this evidence and infer that Niles was alive at the time appellant fired his weapon.

5

Niles may have been alive at that time; he may not have been; there is no principle way to tell. In fact, the prosecution conceded as much when it wasn't taking liberty("hunted" )7RT 3088) with the evidence. The prosecution said: "when the defendants drove away in the red Jetta, nobody knew that Phillip Niles was alive or dead." (7RT 3062 (italic added).)

"[Appellant] sticks that Beretta out of the passenager window and tries to finish the job. He does not know whether or not Phillip Niles is actual dead or alive......" (7Rt 3088 (italic added).) Nobody knows whether Niles was alive or dead as the Jetta drove away and appellant fired his gun. To think it was one way or the other is simply to speculate, as the prosecution, in its moments of fairness, allowed.

The prosecution pinned appellant's murder liability on the shots he took from the Jetta: "What I want to focus on is the time period in between the moment where Laquan Parker shoots and the time period from there to the moment that [appellant] shoots, and that is the focus of an aiding and abetting argument.That is the focus on what is going on here, and that is the relevant time period when we look at what action show [appellant] specific intent to kill to help Laquan Parker kill Phillip Niles as an aider and abettor." (7RT 4532.) As such, the prosecution conceded, "The timing of the death is critical in this case." (7RT 4533.) But there is no principled way to tell whether Niles was alive at the time appellant fired those shots. And since the crime of murder ends at death, appellant could not , on this record, be held liable as an aider and abettor to murder....his shots cannot be proven by solid credible evidence to have occurred while the murder was still on-going. The trial court accordingly abused its discretion in failing to reverse the murder conviction as contrary to the evidence and law. This conclusion remains true notwithstanding the fact that substantial evidence may support appellant's liability as an aider and abettor not for his firing his weapon during the escape,

6

but rather for his role as a "triangulating" backup during the inital confrontation. (see 7RT 4544-4545.) The prosecution...... both in its argument to the jurors and in litigation on the new trial motion.....elected to locate the actus reus of appellant's aiding and abetting liability in his gunshots, not in his role as backup. That election avoided the need for instruction on unanimity. The jurors could have remained unconvinced that appellant played a role in the confrontation even if they found he fired the shots. or the contrapositive of such (i.e, backup yes, shots no).(See 4RT 2115, 2178 [Love did not recall appellant having a gun or saying or doing anything during the confrontation]; 4RT 2247, 2278-2279 [Lyons did not recall appellant ever firing his weapon, but he did have his gun out during the confrontation]; 6RT 2793 [Lyons told a defense investigator that she never saw appellant with a weapon during the confrontation or escape]; 6RT 2120, 2845-2846 [Love and Parker said Parker fired appellant''s gun, not appellant]; People v. Burns (1987) 196 Cal.App.3d 1440, 1458 [unanimity instruction required" if the jurors could other-wise disgree which act a defendant committed and yet convict him of the crime charged"].) In lieu of instruction on unanimity, a prosecutor may link each specific count to a specific criminal act. (People v. Brown (2017) 11 Cal.App.5th 332, 341.)

When this ocurrs, there is "an implicit presumption that the jury will rely on the prosecution's election and, indeed, is bound by it." (Ibid.) An appellant court is likewise bound by the prosecutor's election on review, (Ibid.) In addition, the prose-cution asserted that the shots fired from the car were fired at Niles and used that assertion as a bases for intent to kill, al-though there no evidence in the record to support that claim.

The aiding and abetting happen when Mr. Perkins fired a gun at an individual who already had been shot; (8RT 4614 [7-8]. When viewing the testimony of the witnesses there's no evidence that suggest defendant Perkins fired those shots at Niles.

Love Testimony:

Q. When you heard the next shot were you looking at your phone. (RT 2121 [5-6].

A. No when I heard the shot, I then looked up; and I saw more fire out the window......But again, I didn't see anyone get hit or anyone outside the car. (RT 2121 [7-10].

Q. At anytime after you, Dezerae Lyons and the defendants got in the car, did you ever see Phillip Niles again? (2121 [19-17].

A. No (2121 [20].

Q. When defendant Parker drove the car down that street was that in the same direction that you saw Phillip go ? (2121 [24-26].

A. I have no idea where Phillip went (2121 [27].

Q. Did you see Mr. Perkins do anything to Mr. Niles ? (2178[11-12]

A. No (2178[13]

Lyons Testimony:

Q. Did you see where Phillip ran to after the shooting(2242[16-17]

A. I didn't see. No, i'm not sure where he was going.( 2278 [20-21].

Q. Did you see him fire anything at Mr. Niles,(2278[20-21].

A. No (2278[25].

The prosecution claim that the shots from the car were aimed at Niles is an opinion, it is surely not a fact. The facts is, there is no evidence that suggest those shots were fired at Niles and being the bases of the prosecutions theory of intent, it would be a violation of appellants right to due process to allow appellant to be found guilty based on a factless and unstantiated opinion. Especially when that elements is required in order to find the appellant guilty using an aiding and abeting theory.

The federal constitutional guarantee of due process protects the accused against conviction except upon proof beyound a reasonable doubt of every fact necessary to constitue the crime with which he is charged, (In re Winship (1970) 432 U.S. 197, 215.)

8

1         A conviction based on insufficient evidence is erroneous per
2     se and must be reversed. (Thompson v. Louisville (1960) 362 U.S.
3     199, 206; Jackson v. Virginia (1979) 443 U.S. 307, 324.) Since
      the prosecution failed to elicit substantial evidence that
4     appellant's two shots aided in Niles' murder, the trial court
5     abused its discretion in denying his new trial motion, and this
      Honorable Court should vacate the conviction.
6

7

8

9

10

11    Date: 1-6-23                          Respectfully submitted.

12    _____

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    9

## PROOF OF SERVICE BY MAIL

### BY PERSON IN STATE CUSTODY

(Fed. R. Civ. P. 5; 28 U.S.C. § 1746)

I, __Brandon Jamal Perkins__, declare:

I am over 18 years of age and a party to this action. I am a resident of _____

_____ __Folsom State__ Prison,

in the county of __Sacramento__,

State of California. My prison address is: __P.O. Box 950 Folsom Ca 95763__,

_____

On __January 6, 2023__,
(DATE)

I served the attached: __Petition for Writ of Habeas Corpus__

_____
(DESCRIBE DOCUMENT)

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional institution in which I am presently confined. The envelope was addressed as follows:

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on __1-6-23__ _____
(DATE)                      (DECLARANT'S SIGNATURE)

Civ-69 (Rev. 9/97)                                        ::ODMA\PCDOCS\WORDPERFECT\22832\1



Brandon Tensel # BR4497
Folsom State Prison

FOLSOM STATE PRISON
P.O. BOX 950
FOLSOM, CA 95763
LEGAL MAIL

US POSTAGE
ZIP 95671 $ 000.00
02 4R
0000346813 JAN 09 2023

Clerk of the United States District Court
Central District of California
United States Courthouse
ATTN: Intake/Docket Section
255 East Temple Street, Suite TS 134
Los Angeles, California 90012

(CV)

CLERK U.S. DISTRICT COURT
JAN 12 2023
CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

